USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  09/03/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                          :

BARRY NEMHARD,                                          :

                       Plaintiff,         :                1:25-cv-73-GHW

           -v-                               :                MEMORANDUM
                                          :                OPINION & ORDER

NEW YORK CITY OFFICE OF CHILD                          :
SUPPORT,                                                :
                                          :

                     Defendant.         :

------------------------------------------------------------------- X
GREGORY H. WOODS, United States District Judge:

      In August 2002, Defendant New York City Office of Child Support allegedly garnished the wages of Plaintiff Barry Nemhard without first providing him with notice or a hearing.  As a result of his reduced wages, Plaintiff struggled financially and emotionally.  He alleges that he was evicted, and that his car was repossessed.  He also experienced emotional distress.

      Now, over two decades later, Plaintiff commenced this action under 42 U.S.C. § 1983, alleging that Defendant violated the due process clause of the Fourteenth Amendment by garnishing his wages without notice or an opportunity to be heard.  Defendant moved to dismiss the case as time barred.  Because more than twenty years have elapsed since Plaintiff knew or had reason to know that Defendant garnished his wages without prior notice, Defendant's motion to dismiss is granted.  However, Plaintiff is granted thirty days' leave to amend his complaint.

I.    BACKGROUND

    A.  Facts[1]

On or about August 1, 2002, the New York City Office of Child Support garnished Plaintiff Barry Nemhard's wages without "prior notice or a hearing to determine the validity or necessity of the garnishment . . . ." *Id.* ¶ 6. As "a direct result of the garnishment," he "suffered extreme financial hardship." *Id.* ¶ 7. For example, Plaintiff "was unable to pay rent for his apartment, leading to his eviction." *Id.* He also alleges that his car was repossessed. *Id.* Plaintiff's "inability to maintain control of his income deprived him of the means to meet his basic obligations, causing him severe emotional and financial harm," including "long-term economic damages, pain, suffering, and emotional distress." *Id.* ¶¶ 8–9.

    B.  Procedural History

Plaintiff commenced this lawsuit on January 3, 2025. He appears in this action *pro se.* He sues the New York City Office of Child Support. *Id.* ¶ 5. Plaintiff brings a claim under 42 U.S.C. § 1983 ("Section 1983") based on Defendant's alleged violation of the due process clause of the Fourteenth Amendment. *Id.* ¶¶ 10–15. Plaintiff alleges that "Defendant's actions, including garnishing wages without notice or a hearing, deprives Plaintiff of due process as guaranteed under the Fourteenth Amendment," and that "Defendant deprived Plaintiff of constitutional rights, including due process, by enforcing garnishments without proper legal procedures." *Id.* ¶¶ 11, 14.[2]

---

[1] The facts are taken from the complaint, Dkt. No. 1, and are accepted as true for the purposes of this motion. *See, e.g., Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] Plaintiff also purports to assert a claim directly under the Fourteenth Amendment based on the same allegations that underpin his Section 1983 claim. *See* Compl. ¶¶ 10–12. However, "when [Section] 1983 provides a remedy, an implied cause of action grounded on the Constitution is not available." *Pauk v. Bd. of Trs. of City Univ. of New York*, 654 F.2d 856, 865 (2d Cir. 1981); *see Turpin v. Mailet*, 591 F.2d 426, 427 (2d Cir. 1979) ("[T]here is no place for a cause of action against a municipality directly under the [Fourteenth] Amendment, because the plaintiff may proceed against the [municipal defendant] under [Section] 1983," following the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978)); *see also Lehman v. Doe*, 66 F. App'x 253, 254–55 (2d Cir. 2003) (summary order) (affirming the dismissal

Because Plaintiff is proceeding *pro se*, the Court liberally construes the complaint to assert a claim under state law for a violation of the New York State Constitution's due process clause. N.Y. Const. art. I, § 6.

On April 24, 2025, Defendant filed a motion to dismiss. Dkt. No. 8; Dkt. No. 9. ("Mem."). On May 27, 2025, Plaintiff filed his opposition. Dkt. No. 12 ("Opp."). The motion was fully briefed when Defendant filed its reply on June 30, 2025. Dkt. No. 16 ("Reply").

## II.    LEGAL STANDARD

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). To determine plausibility, courts follow a "two-pronged approach." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alterations and internal quotation marks omitted). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

---

of a claim when "[t]he only difference between the [dismissed claim] and the [other] causes of action is that in the [dismissed claim], Plaintiff] includes the Fourteenth Amendment as a basis for his action" and "when [Section] 1983 provides a remedy, an implied cause of action grounded directly in the Constitution is not available.") (citing *Pauk*, 654 F.2d at 865).

In this case, Defendant argues that Plaintiff's claim is time barred. "The lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 149 (2d Cir. 2024), *cert. denied*, 2025 WL 1678984 (U.S. June 16, 2025). "However, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Id.* "Of course, affirmative defenses, like the statute of limitations, 'often require[ ] consideration of facts outside of the complaint and thus [are] inappropriate to resolve on a motion to dismiss.'" *Id.* at 149–50 (alterations in original). "Dismissal under Rule 12(b)(6) is therefore appropriate only if 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Id.*

Because Mr. Nemhard is proceeding *pro se*, the Court must construe his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)); *see also Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014). That liberal standard notwithstanding, "*pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) (quoting *Edwards v. INS*, 59 F.3d 5, 8 (2d Cir. 1995)); *see also Rahman v. Schriro*, 22 F. Supp. 3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements.") (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997)).

## III. DISCUSSION

### A. The New York City Office of Child Support is Not a Suable Entity

At the outset, the Court must dismiss Plaintiff's claim against the New York City Office of Child Support because, as an agency of the City of New York, it is not an entity that can be sued.

*See* N.Y. City Charter ch. 17, § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *see Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore dismisses all claims against the New York City Office of Child Support.

However, in view of Plaintiff's *pro se* status, the Court substitutes the City of New York as the proper defendant pursuant to Federal Rule of Civil Procedure 21. *See Obah v. Dep't of Admin. for Children's Servs.*, 2024 WL 2848903, at *5 (S.D.N.Y. May 2, 2024), *report and recommendation adopted sub nom. Obah v. Dep't of Admin. for Child. Servs.*, 2024 WL 2848883 (S.D.N.Y. May 30, 2024). Consequently, although the Court dismisses Plaintiff's claim against the New York City Office of Child Support, the Court substitutes the City of New York in its place.

### B. Plaintiff's Section 1983 Claim is Time Barred

Plaintiff's Section 1983 claim against Defendant is time barred because more than three years have elapsed since Plaintiff knew or had reason to know of his injury, namely, the wage garnishment. "Section 1983 claims based on events that occurred within New York State have three-year statute of limitations." *Holden v. Port Auth. of New York & New Jersey*, 521 F. Supp. 3d 415, 433–34 (S.D.N.Y. 2021); *accord Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) ("Section 1983 actions filed in New York are . . . subject to a three-year statute of limitations."). That is because "[i]n section 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions,'" *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)) (alterations in original), which in New York is three years, N.Y. C.P.L.R. § 214(5).

"A Section 1983 claim does not accrue until the plaintiff 'has a complete and present cause of action.'" *Mallet v. New York State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 131 (2d Cir. 2025). "The accrual analysis involves two steps. We begin by 'identifying the specific constitutional right alleged to have been infringed.'" *Id.* "Next, we ask when the plaintiff knew or had reason to know of 'the injury which is the basis of his action,' *i.e.*, the alleged injury which—according to the plaintiff—amounts to an infringement of that constitutional right.'" *Id.*; *see also Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (explaining that the three-year statute of limitations on Section 1983 claims "run[s] from the time a 'plaintiff knows or has reason to know of the injury' giving rise to the claim.").

Here, it is clear from the face of the complaint that Plaintiff's claim is barred as a matter of law because Plaintiff's claim accrued well over three years ago, when Plaintiff knew or had reason to know that his wages were garnished without prior notice or a hearing. First, "the specific constitutional right alleged to have been infringed," *Mallet*, 126 F.4th at 131, is the right to procedural due process under the Fourteenth Amendment. "Ordinarily, the due process clause of the Fourteenth Amendment requires that a state or local government afford persons 'some kind of a hearing' prior to depriving them of a significant liberty or property interest." *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001). "[T]he [Supreme] Court has stated that a procedural due process claim 'is not complete when the deprivation occurs.' Rather, the claim is 'complete' only when 'the State fails to provide due process.'" *Reed v. Goertz*, 598 U.S. 230, 236 (2023). In this case, Plaintiff alleges that Defendant garnished his wages without prior notice or a hearing "to determine the validity of the garnishment, in violation of [his] right to due process." Compl. ¶ 6.

Next, because the injury for which Plaintiff seeks relief is the allegedly unlawful wage garnishment, the relevant question is when he knew or should have reasonably known that his wages had been withheld without prior notice or a hearing. *See, e.g.*, *Mallet*, 126 F.4th at 128, 131

(explaining that "[b]ecause the injury for which [a formerly incarcerated person] seeks relief is cancer, the relevant question is when he knew or should have reasonably known that he had prostate cancer," and concluding that "it is very plausible that [he] acquired this knowledge less than three years before he filed this suit," after he was released from prison, "rendering his claims timely").

In this case, Plaintiff knew or had reason to know that his wages had been withheld almost immediately upon receipt of his first reduced paycheck after Defendant garnished his wages "on or about August 1, 2002." Compl. ¶ 6. Even if Plaintiff did not immediately notice the reduced wages, it is implausible that over twenty years elapsed before Plaintiff recognized that his wages were being garnished, particularly given the alleged severity of the effect of the garnishment: Plaintiff alleges that as "a direct result of the garnishment," he "suffered extreme financial hardship," was evicted, and lost his car. *See id.* ¶ 7.[3] Plaintiff does not argue that he did not know that his wages were withheld until within the past three years. Moreover, as the person whose wages were withheld, Plaintiff had reason to known that he never received notice or a hearing before the garnishment began. Therefore, it is apparent from the face of the complaint that Plaintiff had reason to know of his alleged injury well over three years before filing this suit. Consequently, because more than three years have elapsed since Plaintiff at the very least had reason to know that his wages had been garnished without prior notice or a hearing, Plaintiff's Section 1983 claim is time barred.

Plaintiff contends that his claim is not time barred because "the continuing violation doctrine preserves [his] claims," Opp. at 2, but the continuing violation doctrine does not apply here. "The continuing violation doctrine, where applicable, provides an 'exception to the normal knew-or-should-have-known accrual date.'" *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015). "It applies to claims 'composed of a series of separate acts that collectively constitute one unlawful [ ]

---

[3] Plaintiff also alleges that his "inability to maintain control of his income deprived him of the means to meet his basic obligations, causing him severe emotional and financial harm." *Id.* ¶¶ 8–9.

practice.'" *Id.* (alteration in original). "The continuing violation doctrine thus applies not to discrete unlawful acts . . . but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Id.* "Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994).

The continuing violation doctrine does not apply because Plaintiff's Section 1983 claim is not "composed of a series of separate acts that collectively constitute one unlawful [ ] practice." *See Gonzalez*, 802 F.3d at 220. Rather, Plaintiff's claim is based on a single instance in 2002 in which Defendant allegedly failed to provide "notice or a hearing to determine the validity or necessity of the garnishment, in violation of [his] right to due process." Compl. ¶ 6. Plaintiff contends that the "garnishment initiated by Defendant in 2002 created an ongoing deprivation," Opp. at 2, but the fact that Plaintiff "continues to suffer an ongoing injury does not bring his claim under the auspices of the continuing violation doctrine" as "each payment Plaintiff is required to make under the child support order is not a new and separate act and injury, but merely a consequence of the initial act," namely, the issuance of an income withholding order for child support obligations. *See Hall v. Clinton Cnty.*, 2020 WL 1923236, at *5 (N.D.N.Y. Apr. 21, 2020) (rejecting Plaintiff's argument that "the violations of his rights 'continue to this day' because he is still subject to [a] child support order" because each payment was the consequence the initial issuance of the order).

Moreover, other considerations weigh against applying the continuing violation doctrine in this case. "Courts within the Second Circuit 'consistently have looked unfavorably on continuing violation arguments' . . . ." *Giordano v. Saks Inc.*, 654 F. Supp. 3d 174, 194 (E.D.N.Y. 2023), *aff'd sub nom. Giordano v. Saks & Co. LLC*, 2025 WL 799270 (2d Cir. Mar. 13, 2025) (declining to apply the

continuing violation doctrine in the antitrust context). "Further, as the Supreme Court has noted, '[s]tatutes of limitations are designed to encourage plaintiffs to pursue diligent prosecution of known claims.'" *Id.* (citing *Cal. Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497 (2017)).

There is also no basis to apply the doctrine of equitable tolling to this case on this record.[4] "In 'rare and exceptional circumstances,' the statute of limitations governing a [Section] 1983 claim may be subject to equitable tolling, 'where necessary to prevent unfairness to a plaintiff who is not at fault for her lateness in filing.'" *Clark v. Hanley*, 89 F.4th 78, 92 (2d Cir. 2023) (internal citations omitted). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way." *Id.* (alterations in original). "'The law prohibits a judge from exercising her discretion where these two elements are missing[,]' but '[i]f they are found to be present . . . then a judge brings discretionary considerations to bear in deciding whether to permit equitable tolling.'" *Id.* (alterations in original).

Plaintiff has failed to establish that equitable tolling applies to his case. First, Plaintiff has not established that he has taken any steps or made any effort to pursue his rights over the past twenty years, let alone that he has been "pursuing [his] rights diligently." *See Clark*, 89 F.4th at 92. Second Plaintiff has not established that some "extraordinary circumstance" stood in his way." *Id.* Plaintiff argues that his lack of familiarity "with legal procedures," his *pro se* status, and that he "was never informed of his right to contest the garnishment," prevented him from timely filing his claims. Opp. at 2. But equitable tolling cannot be premised merely on Plaintiff's "lack of education, *pro se* status, or ignorance of the right to bring a claim." *See Watson v. United States*, 865 F.3d 123, 133 (2d

---

[4] "Although federal law determines when a section 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of section 1983." *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007). "As the Second Circuit has explained, New York courts have adopted the same equitable tolling doctrine that exists under federal law." *Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 235 (E.D.N.Y. 2015) (Bianco, J.) (citing *Keating v. Carey*, 706 F.2d 377, 381 (1983)).

Cir. 2017) (collecting cases.); *see also Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000) (habeas

petitioner's "*pro se* status . . . does not merit equitable tolling"). Nor does Plaintiff's alleged lack of

financial resources establish that equitable tolling is appropriate; many litigants lack financial

resources, but "[e]quitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-

all for an entirely common state of affairs." *Watson*, 865 F.3d at 133.

 Although equitable tolling often raises fact-specific issues premature for resolution on a Rule

12(b)(6) motion," *Clark*, 89 F.4th at 94, here, Plaintiff has "had a full and fair opportunity to brief,

and to offer affidavits in support of, his tolling arguments" through "the course of proceedings on

the motion to dismiss," *Abbas*, 480 F.3d at 640–41 (rejecting the *pro se* plaintiff's argument that

equitable tolling applied). Therefore, on this record, it is clear that equitable tolling does not apply:

there is no indication that Plaintiff diligently pursued his rights or that some extraordinary

circumstance stood in his way over the course of the past twenty years. *See Ellis*, 81 F. Supp. 3d at

235 (concluding at the motion to dismiss stage that there "is absolutely no basis to apply the

doctrine of equitable tolling" where "Plaintiff was aware of the allegedly unconstitutional conduct

[for at least five years], and has failed to provide to the Court any facts that could give rise to

equitable tolling."). Accordingly, it remains clear from the face of the complaint that Plaintiff's

Section 1983 claim against Defendant is time barred but, in light of Plaintiff's *pro se* status, Plaintiff is

granted leave to amend.

### C.  The Complaint Fails to State a Claim Against Defendant Under Section 1983

 Even if Plaintiff's claim was not barred by the statute of limitations, Plaintiff has failed to

state a claim against Defendant under Section 1983 because he has not plausibly pleaded (1) the

existence of a municipal policy or (2) any underlying constitutional violation. Section 1983 states in

relevant part the following: "Every person who, under color of any statute, ordinance, regulation,

custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States

. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "Under the standards of *Monell v. Department of Social Services*, a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (internal citation omitted). "The elements of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020). An underlying constitutional violation is a required predicate for municipal liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

"The existence of a municipal policy that gives rise to *Monell* liability can be established in four ways: (1) a formal policy endorsed by the municipality; (2) actions directed by the government's authorized decisionmakers or those who establish governmental policy; (3) a persistent and widespread practice that amounts to a custom of which policymakers must have been aware; or (4) a constitutional violation[ ] resulting from [policymakers'] failure to train municipal employees[.]" *Deferio v. City of Syracuse*, 770 F. App'x 587, 589–90 (2d Cir. 2019) (summary order) (internal citations and quotations omitted).

While "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances," it "attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 483 (1986) (explaining that "*Monell's* language makes clear that it expressly envisioned other officials 'whose acts or edicts may fairly be said to represent official policy,' and whose decisions therefore may give rise to municipal liability

under Section 1983") (internal citations omitted); *see also Hines v. Albany Police Dep't*, 520 F. App'x 5, 7 (2d Cir. 2013) (summary order) (same) (quoting *Pembaur*, 475 U.S. at 480).

Here, Plaintiff has failed to establish the existence of a municipal custom, policy, or usage. Plaintiff argues in his opposition that he "challenges [the New York City Office of Child Support's] administrative actions" of garnishing his wages without prior notice or a hearing. Opp. at 2. But Plaintiff's complaint does not allege that the violation resulted from a formal policy or from failure to train municipal employees. Nor does Plaintiff allege any facts establishing that an authorized decisionmaker—or that anyone who establishes governmental policy—made a "deliberate choice to follow a course of action," namely, to engage in a practice of withholding notice and a hearing before garnishing the wages of child-support debtors, when compared to "various alternatives." *Pembaur*, 475 U.S. at 483. Rather, Plaintiff alleges a single instance of conduct: that Defendant garnished *his* wages "without prior notice or a hearing . . . ." *See* Compl. ¶ 6. This sole factual allegation falls well short of plausibly pleading that Defendant adopted policy or practice of failing to provide notice or a hearing before garnishing wages. Even to the extent that Plaintiff's allegation that "Defendant deprived Plaintiff of constitutional rights, including due process, by *enforcing garnishments* without proper legal procedures" can be construed as alleging that other instances of garnishments without notice and hearing have occurred, *id.* ¶ 14, as pleaded, the allegation fails to plausibly establish that the practice was "persistent and widespread as to practically have the force of law." *Jones*, 691 F.3d at 80 (quoting *Connick v. Thompson,* 131 S.Ct. 1350, 1359 (2011)). Plaintiff therefore has failed to plausibly plead the existence of a municipal custom, policy, or usage that would support a claim under Section 1983.

In addition to failing to establish a municipal policy of garnishing wages without prior notice or a hearing, Plaintiff "has failed to demonstrate the existence of an underlying constitutional violation in the [c]omplaint, thereby precluding a *Monell* claim" against Defendant. *See Corley v.*

*Vance*, 365 F. Supp. 3d 407, 462 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d

Cir. 2020); *Bobolakis* v. *DiPietrantonio*, 523 F. App'x 85, 87 (2d Cir. 2013) (summary order) (affirming

dismissal of *Monell* claims where plaintiff "suffered no violation of his constitutional rights and there

is no basis for imposition of liability on the Town") (citing *Segal* v. *City of New York*, 459 F.3d 207,

219 (2d Cir. 2006)).

As explained above, "the due process clause of the Fourteenth Amendment requires that a

state or local government afford persons 'some kind of a hearing' prior to depriving them of a

significant liberty or property interest." *Locurto*, 264 F.3d at 171. "[I]n evaluating what process

satisfies the Due Process Clause, 'the Supreme Court has distinguished between (a) claims based on

established state procedures and (b) claims based on random, unauthorized acts by state

employees.'" *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (citing

*Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996)). "When

the state conduct in question is random and unauthorized, the state satisfies procedural due process

requirements so long as it provides meaningful post-deprivation remedy." *Id.*

"In contrast, when the deprivation is pursuant to an established state procedure, the state

can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Id.*

"Under those circumstances, 'the availability of post-deprivation procedures will not, *ipso facto,* satisfy

due process." *Id.* Rather, if the deprivation "was part of an established state procedure, such that

the availability of a post-deprivation remedy would not *automatically* satisfy due process, [the court]

would merely go on to determine what process was due." *Id.* at 466 (alterations in original).

> This [the court does] by balancing the following three factors:  First, the private interest that
> will be affected by the official action; second, the risk of an erroneous deprivation of such
> interest through the procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the Government's interest, including the
> function involved and the fiscal and administrative burdens that the additional or substitute
> procedural requirement would entail.

*Id.* (quoting *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976)).

At the outset, because Plaintiff has not established that his alleged deprivation was pursuant to an established state procedure, the Court evaluates Plaintiff's claim as if the alleged wage garnishment of Plaintiff's income was the product of a random, unauthorized act by state employee.[5] In this case, New York provided Plaintiff with a meaningful post-deprivation remedy through an array of available administrative procedures. "[A] child-support debtor is entitled to the post judgment remedies outlined in Article 52 of the New York Civil Practice Law and Rules ('Article 52' and 'CPLR')." *Basciano v. Child Support Enf't Mt. Vernon Off.*, 2020 WL 550569, at *3 (S.D.N.Y. Feb. 4, 2020).[6] "For example, when an SCU issues an execution for enforcement of current support or arrears, but there is 'an error in the amount' purportedly owed, the debtor may assert that error as a 'mistake of fact' and 'shall have an opportunity to make a submission in support of the objection within fifteen days from service of a copy' of the execution." *Id.* (quoting N.Y.C.P.L.R. § 5241(a)(8), (e)). "If the agency does not agree with the debtor's objection, the debtor may seek judicial review of the agency's determination in a proceeding brought in a state court under Article 78 of the CPLR ('Article 78')." *Id.* (citing *Beattease v. Washington Cnty. Support Collection Unit*, 92 A.D.3d 1037, 1038 (2d Dep't 2012) (noting that an applicant for relief should commence an Article 78 proceeding after exhausting his remedies before an SCU).[7]

---

[5] As already explained in the context of *Monell*, Plaintiff has not plausibly alleged that Defendant has an established procedure of garnishing the wages of child support debtors without notice or a hearing. And while "the acts of high-ranking officials who are 'ultimate decision-maker[s]' and have 'final authority over significant matters,' even if those acts are contrary to law, should not be considered 'random and unauthorized' conduct for purposes of a procedural due process analysis," *Rivera-Powell*, 470 F.3d at 465, as explained above, Plaintiff's complaint does not allege that any high-ranking official chose to garnish Plaintiff's wages without prior notice or a hearing.

[6] For context, "[i]n New York, '[e]ach local social services district, through a Support Collection Unit ('SCU'), is required to take all steps necessary to establish, collect, and enforce child support orders.'" *Basciano*, 2020 WL 550569, at *3 n.1. "Once a child support order has been entered, the local SCU . . . has various methods of enforcing child support arrears, including, *inter alia*, (1) the issuance of income executions for child support enforcement, and (2) the imposition of child support liens against real and personal property and seizure of assets, bank accounts, and insurance settlements." *Id.*

[7] "Article 78 of the New York Civil Practice Law, an amalgam of the common law writs of certiorari to review, mandamus, and prohibition, provides both a hearing and a means of redress for petitioners." *Hellenic Am. Neighborhood*

Here, Plaintiff has not alleged facts showing that he has sought Article 52 administrative review or Article 78 judicial review, or that either remedy is inadequate. *Cf. Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 882 ("Even if [plaintiff] has a protectable property and liberty interest . . . because of the availability of an Article 78 proceeding, was not deprived of such property or liberty without due process of law."). Several courts in this district have also dismissed similar claims brought by plaintiffs challenging child support wage garnishment orders because of the availability of administrative remedies. *See Hall v. Child Support Inforcement (CSU)*, 2024 WL 2784875, at *6 (S.D.N.Y. May 28, 2024) (dismissing a plaintiff's complaint that asserted claims under Section 1983 for violations of her right of procedural due process with respect to the garnishment of her wages to satisfy her child support obligations because "[w]ithout seeking Article 52 administrative review or Article 78 judicial review, Plaintiff cannot assert that she was denied procedural due process") (collecting cases); *see also Smith v. New York Child Support Process Ctr.*, 2019 WL 6312178, at *3 (S.D.N.Y. Nov. 25, 2019), *appeal dismissed*, No. 20-26, 2020 WL 3643569 (2d Cir. May 7, 2020) ("Even if the Court assumes that Plaintiff's property was seized without notice or opportunity to challenge the seizure before it occurred, those facts alone do not give rise to a due process claim" because "[s]tate law, specifically, Section 52 of the CPLR, provides for due process to child support debtors facing seizure or garnishment.").

Therefore, to the extent that a city employee or agency randomly and without authorization garnished Plaintiff's wages, Plaintiff has not established that Defendant violated his right of procedural due process under the Fourteenth Amendment on those grounds. In sum, because Plaintiff has failed to plausibly plead the existence of (1) a municipal custom, policy, or usage and (2)

---

*Action Comm.*, 101 F.3d at 881. "[A] petitioner in an Article 78 proceeding . . . is permitted to submit . . . affidavits and other written proof [of their claim], and where a triable issue of fact is raised, the petitioner may obtain a trial." *Id.* "Additionally, constitutional issues can be decided in Article 78 proceedings. *Id.*

an underlying constitutional violation that would support a claim under Section 1983, his Section

1983 claim is dismissed.

### D. The Court Cannot Determine on this Record Whether the *Rooker-Feldman* Doctrine Bars Plaintiff's Complaint

Defendant argues that the *Rooker-Feldman* doctrine "precludes federal district courts from

reviewing final judgments of the state courts," but the Court cannot conclude on this record

whether Plaintiff is challenging a state-court judgement such that the narrow *Rooker-Feldman* doctrine

bars his claims.  "The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in

effect are appeals from state court judgments, because the Supreme Court is the only federal court

with jurisdiction over such cases."  *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021).

"Cautioning that the *Rooker–Feldman* doctrine is meant to occupy 'narrow ground,' the Supreme

Court in *Exxon Mobil* held that the doctrine 'is confined to cases of the kind from which the

doctrine acquired its name:  cases brought by state-court losers complaining of injuries caused by

state-court judgments rendered before the district court proceedings commenced and inviting

district court review and rejection of those judgments.'"  *Green v. Mattingly*, 585 F.3d 97, 101

(2d Cir. 2009) (discussing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291–92 (2005)).

The Second Circuit "has articulated four requirements that must be met for *Rooker-Feldman*

to apply:  (1) the federal-court plaintiff must have lost in state court[;] (2) the plaintiff must complain

of injuries caused by a state-court judgment[;] (3) the plaintiff must invite district court review and

rejection of that judgment[;] and (4) the state-court judgment must have been rendered before the

district court proceedings commenced."  *Dorce*, 2 F.4th at 101–02 (quoting *Hoblock v. Albany Cty. Bd.

of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)) (alterations in original and internal quotation marks

omitted).

16

Here, Plaintiff argues in his opposition that he is "not challenging any state court judgment; rather, he challenges [the New York City Office of Child Support's] administrative actions." Opp. at 2. In response, Defendant asks the Court to "infer" that the administrative agency "was garnishing wages as directed by an income withholding order issued by a judge" following a proceeding in New York State Family Court but concedes that discovery is required to "confirm" this conclusion. *See* Reply at 5, 11. On this scant record, the Court does not, at this stage, conclude that the *Rooker-Feldman* doctrine bars Plaintiff's case. *Cf. Morrison v. City of New York*, 591 F.3d 109, 115 (2d Cir. 2010) ("At least absent further evidence [about an at-issue] order, we find no basis for construing the complaint as an attack on the Family Court's order, rather than an attack on independent discretionary acts and decisions of the [] staff that were not compelled by court order"). Because it is not clear that Plaintiff challenges a state-court judgment, the Court does not dismiss Plaintiff's case on those grounds.

### E. The Court Declines Supplemental Jurisdiction

Having dismissed Plaintiff's Section 1983 claim, the Court declines to accept supplemental jurisdiction over any residual state law claims, including claims that Defendant violated the New York State Constitution's due process clause. *See Triestman*, 470 F.3d at 474 (noting that pro se pleadings must be interpreted "to raise the strongest arguments that they suggest") (internal quotation marks and emphasis omitted). A federal district court may decline to exercise supplemental jurisdiction over claims under state law if it "has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3); *see Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (same). Accordingly, having dismissed Plaintiff's federal claim, the Court declines to exercise supplemental jurisdiction over any claims under state law that may be implied from Plaintiff's *pro se* pleading.

**IV.     Leave to Amend is Granted**

The Court dismisses Plaintiff's claims against Defendant, but grants Plaintiff leave to replead his claim under Section 1983 against Defendant in an amended complaint.  It is the "usual practice" upon dismissing a complaint "to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  That is especially true where, as here, a plaintiff has not yet had the opportunity to amend the complaint with the benefit of a ruling from the Court.  *See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) ("Without the benefit of a ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies."); *see also Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("A *pro se* complaint is to be read liberally.  Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.").  Accordingly, Plaintiff is granted leave to amend the complaint.  Any amended complaint must be filed within 30 days from the date of this order.  If Plaintiff does not file an amended complaint within the time allowed, the Court will dismiss this action for the reasons set forth in this order and will direct the Clerk of Court to enter judgment for Defendant.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 8 and to mail a copy of this order to Plaintiff.

SO ORDERED.

Dated:  September 3, 2025
         New York, New York

_____
GREGORY H. WOODS
United States District Judge

18